25589.   REARDON v. THE STATE.

25590.   STANTON v. THE STATE.

SUBMITTED JANUARY 13, 1970—DECIDED MARCH 13, 1970— REHEARING DENIED MARCH 26, 1970.

*Carroll L. Cowart, Wensley Hobby,* for appellants.

*J. Max Cheney, District Attorney, Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Executive Assistant Attorney General, Marion O. Gordon, William R. Childers, Jr., Assistant Attorneys General,* for appellee.

ALMAND, Chief Justice. Under a bill of indictment charging Terry Reardon and Kenneth Stanton with the offense of murder, they on the trial of the case were found guilty with a recommendation of mercy. Their motion for a new trial on the general grounds and upon the ground of newly discovered evidence was overruled and the appeal enumerates error on the order denying them a new trial.

A view of the evidence discloses that the defendants Reardon and Stanton were inmates of the Georgia State Prison, as well

as the victim, Robert Wilmot. All three lived in E-1 Cell Block of the State Prison. On Wednesday, July 24, 1968, one Frank Pitts, an inmate of the prison who was also quartered in the same cell block, returned from work to his cell at about 4 p.m. Wilmot came by his cell and Pitts showed him a screw that Wilmot wanted to hang his small electric fan on his cell wall. Wilmot said somebody had taken his fan. Pitts then went to Reardon's cell and found Stanton in the cell with Reardon. Stanton had the small electric fan and was painting it. Wilmot came by Reardon's cell and there were a few words exchanged concerning the fan. A short time later, Pitts went to Wilmot's cell and while he was in the cell with Wilmot, Stanton came in and though according to Pitts no words were exchanged between Stanton and Wilmot, Stanton had a knife in his hand and stabbed Wilmot in the throat. Pitts ran out of the cell and he looked back and saw Reardon enter Wilmot's cell with a pipe in his hand (the pipe as introduced in evidence was 18 inches long and was used as a handle to a mop squeezer). Pitts then heard Wilmot scream and he came out of his cell bleeding profusely and Pitts went to him and gave him first aid to stop the bleeding. A short time later, the pipe and knife were found in an empty cell in the same cell block.

The prison physician testified that the cause of the death of Wilmot was the stab wound in the right side of Wilmot's neck. Charles Balkcom, a prison employee, testified as to finding a small electric fan in Reardon's cell and finding the knife and pipe in an empty cell. He also found in Reardon's cell some wet clothes out of which the prison numbers had been cut. The knife and pipe were not examined for fingerprints.

The record does not disclose any prior altercation between Wilmot and the defendants.

Though the State contended that Wilmot's death resulted from a conspiracy entered into by the defendants, there is no evidence that Reardon aided, abetted, or assisted Stanton in any manner in the killing of Wilmot.

Both of the defendants testified under oath and their sole defense was that of alibi which was supported by the testimony

óf several inmates that at the time Wilmot was stabbed they were not in his cell.

■ "Where one jointly indicted with others for murder is on trial, if there is no evidence of conspiracy and the person on trial did not inflict the mortal wound, a verdict of guilty can not stand." *Fudge v. State,* 148 Ga. 149 (1) (95 SE 980).

There being no evidence of conspiracy in this case and no evidence, direct or circumstantial, that Reardon aided or abetted in any manner with the stabbing of Wilmot by Stanton, the verdict of the jury finding Reardon guilty is unsupported by the evidence and the court erred in not granting Reardon's motion for a new trial.

■ Ground No. 4 of the motion for a new trial is based upon the ground of alleged newly discovered evidence. It consists of an affidavit by one Herman E. Peppers, an inmate of the State Prison. He had testified on the trial of defendants that at the time of the stabbing of Wilmot, Stanton was asleep in the cell next to Peppers' cell. In his affidavit, Peppers stated: ". . . that he testified at that time to the effect that Kenneth Stanton was asleep in his cell at the time of the homicide but at that time did not testify to all that he knew about the case and did not at any time prior to the trial divulge to either Kenneth Stanton or Terry Reardon or to their attorneys, Wensley Hobby and Carroll L. Cowart, that he knew anything more about the case than that to which he testified; that at that time he was of the opinion the testimony for the defense, both as to Terry Reardon and Kenneth Stanton, would be so strong that neither of these defendants would be found guilty and that not wanting, for personal reasons, to involve himself in the case any more than he had to, he refrained from telling anyone all he knew about the homicide of Robert Wilmot that as a matter of fact affiant actually saw the homicide, knows who committed the homicide and knows that the person who committed the homicide was neither Terry Reardon nor Kenneth Stanton. Because he is fearful for his own life and safety, affiant is unwilling to state herein or testify in court as to the identity of the person committing the homicide but does state that he himself was only a few yards away from the place where the homicide oc-

curred, was in a position to see what happened and knows of his own knowledge that neither Terry Reardon nor Kenneth Stanton committed the homicide, had anything to do with the death of Robert Wilmot and that neither of them was near the place of the homicide when it occurred."

On the trial of the case he testified that he was standing on a catwalk in front of his cell at the time Wilmot was stabbed and Wilmot's cell was within range of his view and that he heard someone hollering and no one crossed in front of him or obstructed his view of Wilmot's cell and his affidavit in this respect conflicts with the testimony he gave on the trial.

The newly discovered alleged evidence is purely cumulative of the evidence on the trial as to the defense of alibi.

The verdict finding Stanton guilty is supported by the evidence and it was not error to overrule his motion for a new trial.

*Judgment denying the motion for a new trial to Reardon reversed; judgment overruling Stanton's motion for a new trial affirmed. All the Justices concur, except Felton, J., who dissents from the judgment of affirmance.*

FELTON, Justice, dissenting as to the defendant Stanton. I concur in the judgment as to defendant Reardon. I dissent from the opinion and judgment as to defendant Stanton. I think that Stanton should be granted a new trial on the ground of newly discovered evidence.

The majority bases its ruling as to this ground of the motion on the fact that the newly discovered evidence is cumulative of his evidence as to alibi on the trial.

It seems to me that our courts sometimes, in fact too often, fail to comprehend the true meaning of the expression "not merely cumulative." This court, speaking through Justice Jenkins, in *Johnson v. State,* 196 Ga. 806 (2) (27 SE2d 749), said: "It is only when newly discovered evidence either relates to a particular material issue concerning which no witness has previously testified, or is of a higher and different grade from that previously had on the same material point, that it will ordinarily be taken outside the definition of cumulative evidence, and afford a basis for a new trial." The newly discovered evidence in this case meets the above test. In the first place, the newly

discovered evidence is *direct* evidence. If it should be believed, an inference from ordinary alibi evidence is not necessary to show that this defendant was not present at the place of the crime.. In the second place, in *Fellows v. State,* 114 Ga. 233 (39 SE 885), cited by the court in *Johnson v. State,* supra, the newly discovered evidence was alibi evidence, but it was held not to be merely cumulative for the reason that it placed the defendant at a *different place* from the other alibi evidence. Thirdly, the newly discovered evidence in this case is not merely cumulative because it not only shows that the defendant was not present at the place where the crime was committed but also shows who the killer was. The witness involved still says that he will not testify, but the court does not base its conclusion on that fact. We should grant a new trial and see whether, under the State's guarantee of protection, the witness will testify.