48771. QUEEN v. THE STATE.

CLARK, Judge.

This appeal is from the denial of a new trial motion as amended for a felony conviction for the offense of theft by taking.

The stolen item was a John Deere riding lawn mower found in defendant's possession shortly after the theft. The trial transcript includes a confession after appropriate Miranda warnings followed by a voluntary surrender of a serial plate which was retrieved from the place where it had been buried at defendant's residence. Defendant's unsworn statement indicated the act was the result of taking diet pills for a weight problem. He also stated: "I had no intention of stealing the mower. I guess I did. I didn't have any intention. I didn't have no use for it. It wasn't something that would be valuable enough to steal." (T. 16).

The enumerations of error include the general grounds and the following specific assignments: (1) The trial court erred in its charge on circumstantial evidence by using the words "to preponderate"; (2) The trial court erred in denying defendant's motion for mistrial when a state's witness on direct examination placed the defendant's character in issue; (3) In the sentencing phase the court erred in admitting evidence over objection of a prior conviction since defendant had not been informed of the state's intention in this respect until immediately before commencement of trial.

1. "After a verdict, approved by the trial court, the evidence must be construed by this court in its light most favorable to the prevailing party with every presumption and inference being in favor of upholding that verdict. [Cits.]" *Green v. State,* 123 Ga. App. 286, 287 (3) (180 SE2d 564). The law is well established to the effect that one

found in possession of recently stolen property has the burden of explaining that possession. Code Ann. § 26-1806. "[T]he question of whether the explanation of the possession offered by the defendant in his statement alone, that he found the property, is a satisfactory explanation, is a question for the jury." *Chubbs v. State,* 204 Ga. 762 (1) (51 SE2d 851). Therefore this court is bound by the jury's determination that defendant's explanation was not adequate and his admission plus possession of the stolen property support the verdict.

Defendant's enumerations of error on general grounds are without merit.

2. In appellant's initial brief attacking the use of the phrase "to preponderate" in the charge on circumstantial evidence appellant relied upon the ruling by this court in *Wells v. State,* 126 Ga. App. 130 (190 SE2d 106). There we ruled that "the charge as given could tend to mislead the jury into convicting the defendant on the basis of a preponderance of the evidence."

Thereafter our Supreme Court passed upon this same type charge in *Pless v. State,* 231 Ga. 228 (200 SE2d 897), affirming an armed robbery conviction including a life imprisonment sentence in which the same phrase, "to preponderate," was held not to be harmful error. The opinion pointed out that "This [Supreme] court in a number of cases has held that although it is the better practice in a criminal case not to charge the law on the preponderance of the evidence, to do so does not require a reversal of the judgment of the trial court. *Williams v. State,*125 Ga. 302 (3) (54 SE 108); *McLeod v. State,* 128 Ga. 17 (5) (57 SE 83); *Holmes v. State,* 131 Ga. 806 (2) (63 SE 347); *Howell v. State,* 160 Ga. 899 (5a) (129 SE 436)." The court then concluded that "In view of the direct evidence authorizing the verdict of the jury, and the repeated instructions to the jury on the state's duty to prove the guilt of the appellant beyond a reasonable doubt, we are convinced that the use of the words 'to preponderate' in the charge on circumstantial evidence did not confuse the jury, and was harmless error beyond a reasonable doubt."

Although appellant undertook by supplemental brief to convince this court that the instant case should be differentiated from the *Pless* ruling, the similarity

between the instant case and *Pless* requires us to follow the ruling of the Supreme Court. "The decisions of the Supreme Court shall bind the Court of Appeals as precedents." Code Ann. § 2-3708. Sub judice, the court charged that Queen's guilt must be proved beyond a reasonable doubt three times before and five times after mentioning the phrase "to preponderate." (T. 17, 18, 19, 20, 21). We also have in the instant case the defendant's confession, his admission of the theft during his unsworn statement, and his burial of the serial plate. All of this evidence is in addition to recent possession of the stolen item.

3. Defendant contends his character was erroneously placed in issue by the reply made by a state trooper in his response to the district attorney's question: "Tell the Court and jury exactly what you did, what you saw, what you know, and if you made any investigation what that investigation was." His reply was: "I was going to work. I was going to go to Athens from my home in Walton County and just after I went by the Bogart junction which is the intersection of 78 and 29 over at the Hess station in Clarke County this old truck driven by Jimmy Queen was pulling out of the driveway and proceeding to Athens. I went on down the road and I decided I wanted to talk to Jimmy about some other business that we had in regard to car stealing." (T. 7, 8).

Defendant's motion for a mistrial was overruled, but the judge properly decided the objectionable matter required inquiry as to its impact upon the jurors. This was done in the following matter upon the jury being returned to the courtroom: "Ladies and Gentlemen of the jury, the court will ask you to disregard and completely erase from your minds a statement that was made by this witness who was not permitted to conclude his statement and was stopped in the middle. I want to ask you if you can erase it from your minds. He testified that he had met this boy and was going to stop him about some stolen cars. Can you erase it from your minds completely? If you can, nod your heads. (Jurors nod heads affirmatively.) So indicated by all of you, and don't consider it at all in your verdict." (T. 9).

*Brown v. State,* 118 Ga. App. 617, 620 (165 SE2d 185),

distinguishes the instant situation from the case where the prosecutor directly elicits the improper evidence. There our court said, "The matter of granting a mistrial is largely within the discretion of the trial court, but that discretion will be controlled when it is apparent that a mistrial was essential to preservation of the right of fair trial. Ordinarily, when illegal testimony is placed in evidence, it is not an abuse of discretion to refuse to grant a mistrial if sufficient corrective instructions are given in ruling the testimony out. *Worthy v. State,* 184 Ga. 402 (3) (191 SE 457); *Stanford v. State,* 201 Ga. 173, 186 (38 SE2d 823); *Fitzgerald v. State,* 82 Ga. App. 521, 525 (61 SE2d 666). This is true even if the illegal testimony has the effect of placing the defendant's character in issue (*Carrigan v. State,* 206 Ga. 707 (3) (58 SE2d 407); *Eden v. State,* 43 Ga. App. 414 (159 SE 134); *Osteen v. State,* 83 Ga. App. 378, 381 (63 SE2d 692)), especially when the testimony is volunteered by the witness and not directly elicited by the solicitor. *Britten v. State,* 221 Ga. 97, 102 (143 SE2d 176); *Waldrop v. State,* 221 Ga. 319, 322 (144 SE2d 372); *Bedgood v. State,* 100 Ga. App. 736, 741 (112 SE2d 430)." For similar situations where the Georgia Supreme Court affirmed denial of mistrial motions and the issuance of cautionary instructions, see *Burns v. State,* 191 Ga. 60, 74 (11 SE2d 350); *Britten v. State,* 221 Ga. 97, 102 (143 SE2d 176).

There is therefore no merit to the second enumeration of error.

4. Defendant contends error in the manner in which the state complied with the requirement of Code Ann. § 27-2534 whereby the state is required to make known to the defendant evidence that it plans to use during the sentencing phase in "aggravation." There was a three day hiatus between the plea of not guilty and the commencement of the trial. The requisite notice of the existence of a previous indictment and conviction that had occurred in 1969 was not given until the day the trial began. Defense counsel objected to the introduction of the certified copy on the ground that the notification was not timely. The objection was overruled. The document introduced was an indictment in two counts, one being for larceny of an automobile and the other for receiving

stolen goods. The indictment further showed the defendant was found not guilty as to the larceny charge but was found guilty on the receipt of stolen goods offense with the sentence being set at three years with the recommendation of misdemeanor punishment.

When the legislature created in 1970 our bifurcated procedure separating the sentencing phase from the trial portion dealing with guilt or innocence, the statute which is now codified as § 27-2534 provided for the admissibility of additional evidence "in extenuation, mitigation, and aggravation of punishment, including the record of any prior criminal convictions and pleas of guilty or pleas of nolo contendere of the defendant, or the absence of any such prior criminal convictions and pleas: Provided, however, that only such evidence in aggravation as the State has made known to the defendant prior to his trial shall be admissible." No time was specified as long as it was prior to trial.

Whenever the courts undertake to interpret the meaning of a statute we are required to "look diligently for the intention of the General Assembly, keeping in view, at all times, the old law, the evil, and the remedy." Code § 102-102 (9). In following this directive we recognize that the intention of the legislature obviously was to give the convicted defendant enough time to rebut or explain any conviction record. Even though we recognize that an accused would have knowledge of his personal history he should nevertheless be given sufficient opportunity to subpoena witnesses and reasonable time in which to obtain evidence that might be available by subpoena. Obviously the giving of notice on the same day as the commencement of trial is not sufficient for this purpose and does not meet the requirement of fair play and sound justice. In consideration of the old law, the evil and the remedy it was clearly the intention of the legislature in creating the bifurcated procedure to give a reasonable period of time in which the convicted person might develop extenuating evidence to meet the previous record.

Accordingly, this case is remanded for retrial limited to the sole issue of punishment. *Lingo v. State,* 226 Ga. 496 (1) (175 SE2d 657); *Johnson v. State,* 126 Ga. App. 757,

760 (191 SE2d 614).

*Judgment affirmed in part; reversed in part. Hall, P. J., concurs. Evans, J., concurs specially.*

Submitted November 7, 1973 — Decided March 1, 1974 — Rehearing denied March 25, 1974 —

*Hudson & Montgomery, David R. Montgomery,* for appellant.

*Nat Hancock, District Attorney,* for appellee.

Evans, Judge, concurring specially.

I concur in the judgment in this case, which affirms as to conviction, and reverses as to the sentence. But I wish to point out that the defendant's character was put in issue by a state's witness, who testified he wanted to see defendant about some business he had with defendant as to car stealing. The trial judge naturally did not wish to have a mistrial, so he repeated the answer given by state's witness, calling it "stolen cars," inquired of the jurors if they could erase this remark from their minds, and each juror nodded his head affirmatively. But could they erase such pointed and damaging evidence from their minds? Unless each juror possessed the power of self-hypnosis, which is a talent bestowed begrudgingly and rarely on humans, *they could not do so!* Could you or I so shape and bend our minds as to eliminate, completely erase and shut out of our minds this testimony? All of us know we could not. And yet the Supreme Court of Georgia, as is pointed out by the majority opinion, has held that such a question by the court and such responses by the jurors cures the error! Far from it! If anything, the question increased the damage. While I am bound by those decisions cited by the majority, I feel that a new trial should be granted because of this error. Contrary to the majority opinion's assertion that the evidence was not responsive to the question, I respectfully show that the district attorney asked such an all-inclusive question, to wit: "Tell the court and jury exactly what you did, what you saw, *what you know,* and if you made any investigation, what that investigation

was," that it would have been almost impossible for any answer to be unresponsive under the breadth of the question.